

# Superior Court of the District of Columbia
## CIVIL DIVISION
### 500 Indiana Avenue, N.W., Suite 5000
### Washington, D.C. 20001 Telephone: 879-1133

CITIMORTGAGE, INC.

                            Plaintiff,

vs.

INTERNAL REVENUE SERVICE

                    Defendant    Case Number   13 - 0003270

## SUMMONS

To the above named Defendant:

      You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

      Your are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays.  You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

**Patrick Jules, Esq**
Name of Plaintiff's Attorney

**9409 Philadelphia Rd**
**Baltimore, MD 21237**
**(410) 284-9600**

*Clerk of the Court*

By _____
                  Deputy Clerk

Date _____12/18/13_____

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ።

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULTMAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

      If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





## TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
### DIVISIÓN CIVIL
**500 Indiana Avenue, N.W., Suite 5000**
**Washington, DC 20001 Teléfono 879-1133**

CITIMORTGAGE, INC.

                                        Demandante,
                                                Número de Caso: _____

         contra
INTERNAL REVENUE SERVICE

                                        Demandado

### CITATORIO

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veinte (20) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarlo por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que Usted le entregue al demandante una copia de la Contestación o en el plazo de cinco (5) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

**Patrick Jules, Esq** _____          *SECRETARIO DEL TRIBUNAL*
Name of Plaintiff's Attorney

                                        By _____
**9409 Philadelphia Rd** _____                    Subsecretario
**Baltimore, MD 21237** _____
**(410) 284-9600** _____          Date _____

如需翻译,请打电话.(202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시오     የአማርኛ ተርጓሚ ለማማኘት (202) 879-4828 ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO, O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍAN RETENERLE SUS INGRESOS, O PODRÍAN TOMAR SUS BIENES PERSONALES O RAÍCES Y VENDERLOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

    Si desea conversar con un abogado y le parece que no puede afrontar el costo de uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse de otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

CITIMORTGAGE, INC
Vs.
SUZANNE M. MILLER

C.A. No.    2013 CA 008276 R(RP)

### INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order.  Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Lee F. Satterfield

Case Assigned to:  Judge THOMAS J MOTLEY
Date:  December 13, 2013
Initial Conference: 9:30 am, Friday, March 14, 2014
Location:  Courtroom 212
              500 Indiana Avenue N.W.
              WASHINGTON, DC  20001

Caio.doc

# ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

## DISTRICT OF COLUMBIA SUPERIOR COURT
### CIVIL BRANCH
500 Indiana Avenue, NW
Washington, D.C. 20001

**CITIMORTGAGE, INC.**
c/o Morris | Hardwick | Schneider, LLC
    9409 Philadelphia Road
    Baltimore, MD 21237

                      Plaintiff,

v.

**SUZANNE M. MILLER**
1317 Rhode Island Avenue, NW
Unit 202
Washington, DC 20005

AND

**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
1317 Rhode Island Avenue, NW, Unit 202
Washington, DC 20005

                      Defendant(s).

Case No.: 13 - 0003276

Judge Assigned:
Next Event:

RECEIVED
Civil Clerk's Office

DEC 1 3 2013

Superior Court of the
District of Columbia
Washington, D.C.

## COMPLAINT FOR JUDICIAL FORECLOSURE

### ACTION INVOLVING REAL PROPERTY

    CitiMortgage, Inc. ("Plaintiff") by and through counsel, Mark H. Wittstadt, Gerard Wm. Wittstadt, Jr., David Chen, Patrick Jules, and Morris | Hardwick | Schneider, LLC, files this action seeking a judicial foreclosure, pursuant to *D.C. Code § 42-816*, and states as follows:

### PARTIES AND JURISDICTION

1.     Suzanne M. Miller ("Suzanne M. Miller") is the record owner of certain real property located at 1317 Rhode Island Avenue, NW, Unit 202, Washington, DC 20005, more specifically described as:

Part of Lot numbered Twenty-nine (29) in Square North of Square numbered Two Hundred Forty-two (N-242) in a subdivision made by Levi Woodbury, as per Plat Recorded in the Office of the Surveyor for the District of Columbia In Liber 28, Folio 73.

The part of Land hereby Conveyed being more particularly designated as Unit Number 202, In a condominium known as "The Rockingham Condominium", according to the Declaration of Condominium Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and By-Laws related thereto, Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and as per Plat of Condominium Subdivision Recorded in the Office of the Surveyor for the District of Columbia in Condominium Book 25 at Page 1.

NOTE: At the date hereof the above described Unit is designated on the Records of the Assessor for the District of Columbia for assessment and Taxation purposes as Lot numbered Twenty Hundred Nine (2009) in Square North of Square numbered Two Hundred Forty-two (N-242).

TOGETHER with all of the appurtenances incident to the said Unit(s) as set forth in the said Condominium Declaration,

SUBJECT, HOWEVER, to the terms, provisions, conditions, covenants, easements and restrictions as set forth in said Declaration of Condominium and the By-Laws relating thereto,

The Condominium Declaration allocates to the Condominium Unit an undivided interest in (stated as a percentage) in the common elements of the Condominium (hereinafter called the Percentage interest). The Percentage interest of the Condominium Unit is set forth in the Condominium Declaration.

(hereinafter "the Property") by virtue of a title deed, recorded with the Recorder of Deeds at Document Number 2004007025 see attached Deed, Exhibit A.

2.   The Property is located within the District of Columbia.

3.   Plaintiff is the beneficiary of a Note secured by the Property.

4.   The Court has personal jurisdiction over the Defendant herein.

5.   Venue is proper in the Superior Court of the District of Columbia.

## FACTS

6.   On December 15, 2003, Plaintiff encumbered the Property with a Deed of Trust securing

a Note in the original principal amount of Two Hundred Seventy-Five Thousand Five

Hundred and 00/100 Dollars ($275,500.00), see attached Note, Exhibit B, and Deed of Trust, Exhibit C, both of which are incorporated hereto by reference.

7.   The Deed of Trust was recorded with the Recorder of Deeds for the District of Columbia on January 14, 2004 as Document Number 2004007026.

8.   The Plaintiff acquired the loan which is the subject of the Complaint through merger with the ABN AMRO MORTGAGE GROUP INC., Inc before the instant Complaint was filed and is the owner and holder of the Note. See Exhibit D

## COUNT I - Judicial Foreclosure

**Plaintiff incorporates by reference all those facts and allegations contained above.**

10.   On January 1, 2009, Suzanne M. Miller defaulted on the Note by failing to make the required payments due and owing under the Note.

11.   On or about June 20, 2013, pursuant to the Deed of Trust, Plaintiff caused to be mailed to Suzanne M. Miller a demand letter stating the total amount needed to cure the default, see attached Exhibit E.

12.   Suzanne M. Miller failed to cure the default, and therefore, pursuant to the terms of the Deed of Trust, the loan was accelerated.

13.   The account is due and owing as of September 30, 2013 for the following:

| | |
|---|---|
| a. Unpaid Principal Balance | $ 255,617.36 |
| b. Interest | $ 72,526.39 |
| c. Escrow Advance Balance | $ 19,557.08 |
| d. PD FC ATTY F&C | $ 711.41 |

| | |
|---|---|
| e. Inspections | $ 364.50 |
| f. O/S BPO Fees | $ 150.00 |
| g. Interest on Escrow Advance | $ 1,556.80 |
| h. Release Fee | $ 31.50 |
| i. FHA/PMI PREM to 9/30/13 | $ 358.16 |
| Total | $ 350,873.20 |

14.　Interest, taxes, insurance and other elements of the debt continue to accrue daily. Costs and legal fees incurred herein may be added to the debt consistent with the Deed of Trust.

15.　Department of Defense records indicate Suzanne M. Miller is not in active military duty, see attached Exhibit F.

16.　Plaintiff lawfully appointed Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr., ("the Wittstadts") as Substitute Trustees under the Deed of Trust through a Deed of Appointment of Substitute Trustees recorded with the Recorder of Deeds for the District of Columbia, see attached Exhibit G.

17.　D.C. Code §42-816 permits the court to decree "that the mortgagor be foreclosed and barred from redeeming the mortgaged property."

18.　Plaintiff is entitled to enforce its Deed of Trust via a judicial foreclosure of the Property.

19.　D.C. Code §42-815.02, only applies to a non-judicial foreclosure proceeding under the power of sale clause of the deed of trust, which in this instant case does not apply.

20.　Neither mediation nor any mediation certificate is required herein.

21. Plaintiff is willing to participate in a mediation conducted by a neutral third-party mediator if Defendant(s) appears and requests the same.

22. Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. have already been appointed as Substitute Trustees for purposes of foreclosure, and have knowledge and experience in the foreclosure field, they should be authorized to carry out the foreclosure by sending notices to affected parties and publishing advertisements consistent with the terms of the Deed of Trust and District of Columbia Code, and thereafter selling the property at auction subject to confirmation or ratification by this Court.

23. Alternatively, Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. may be appointed as Officers of the Court for purposes of selling the Property under SCR-308(b).

24. The Plaintiff should be permitted to submit bid(s) at the sale aforesaid on credit up to the full amount of the debt and all costs incurred under the terms of the Note and Deed of Trust.

25. After the foreclosure sale, the Substitute Trustees will file with the Court a Verified Report of Sale in compliance with SCR-308(b)(4).

26. The Trustee / Officer appointed to sell the Property is entitled to receive a Trustee's Commission per the Deed of Trust and D.C. Code, and may request the same in the Verified Report of Sale.

27. Pursuant to the Deed of Trust your Plaintiff is entitled to collect all expenses incurred in pursuing the remedies provided under the Deed of Trust, including, but not limited to reasonable attorneys' fees, filing fees, costs of publication, costs associated with the sale,

mailing costs, and the costs of title evidence, proof of which will be submitted in the Verified Report of Sale prior to ratification or confirmation.

**WHEREFORE**, Plaintiff prays this Honorable Court grant the following relief:

1. That this Court find that the Defendant is in default on the mortgage obligation;

2. That this Court Order and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. to act as Trustee or Officer to sell the real property and improvements thereon known as 1317 Rhode Island Avenue, NW, Unit 202, Washington, DC 20005 at public auction and to send appropriate notices and publish advertisements for the same;

3. That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. should be permitted to auction the Property aforesaid on a date and in a manner deemed appropriate, to continue the auction for a period not to exceed thirty (30) days without further leave of court, and enter into a contract of sale for the property which contract shall be subject to review and confirmation or ratification by this Court;

4. That Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. shall be ordered to submit a Verified Report of Sale to this Court within a reasonable time following the auction;

5. That this Court award all appropriate commissions due to the Trustees and Auctioneer as set forth in the Deed of Trust;

6. That this Court award the Plaintiff their reasonable attorney fees and costs incurred in the instant action;

7. That this Court enter a deficiency judgment for any amounts remaining due on the Note following the completion of the foreclosure; and

8. That this Court grant such further relief as may be necessary and just under the circumstances.

## COUNT II - Judicial Sale (Alternative)

**Plaintiff incorporates by reference all those facts and allegations contained above.**

28. To the extent that a judicial foreclosure cannot be had, D.C. Code §42-816 also permits the Court to decree a judicial sale of the entire Property.

29. A judicial sale would be a sale in absolute, requiring joinder of all lienholders or parties who have an interest in the subject premises.

30. Lienholders known at this time include:

Bank of America, N.A.
Serve On: C/O PRESIDENT OR CEO
101 N TYRON STREET
Charlotte, NC 28202

Department of the Treasury
Internal Revenue Service
1317 Rhode Island Avenue, NW, Unit 202
Washington, DC 20005

The Rockingham Condominium Association, Inc.
c/o Whiteford, Taylor & Preston, LLP
1025 Connecticut Avenue, NW, Suite 400
Washington, DC 20036

William Colomiris Company
c/o Stephen O. Hessler, Esq.
729 15th Street, NW
Washington, DC 20005

William Colomiris Company
c/o Stephen O. Hessler, Esq.
1313 F Street, NW, Suite 300
Washington, DC 20004

31. The inclusion of said additional party will significantly increase the time and expense of

this process to the detriment of the borrower without significant advances in justice or

equity, therefore it is not believed that this approach should be used absent title defects or

other issues which would prevent a normal judicial foreclosure.

32. No title defects or other issues are known to exist at this time.

33. To the extent that a defect or issue would be discovered in the course of this action, your

Plaintiff moves this Court to permit amendment of the action to include any necessary

party to accomplish complete justice.

WHEREFORE, the foregoing premises considered, to the extent that a judicial foreclosure cannot be had, your Plaintiff moves this Court to permit amendment of this Complaint to join all interested parties, to order a judicial sale in satisfaction of the debt owed to Plaintiff on such terms and conditions the Court may deem appropriate under the law, to enter a deficiency

judgment should amounts remain unpaid on the Note following the sale, and to issue such other

and further direction as may be necessary to accomplish complete relief.

## Verification

I solemnly affirm under the penalties of perjury that the account information set forth above are true to the best of my knowledge, information, and belief.

AFFIANT:

By: _Abigail Beach_
Print: Abigail Beach
Title: Vice President -- Document Control employed by CitiMortgage, Inc.
Plaintiff: CitiMortgage, Inc.
Date: _November 19, 2013_

State of _Kentucky_
County/City _Boone / Florence_

On this _19_ day of _November_, 2013, before me, the undersigned officer, personally appeared _Abigail Beach_ who is the Vice President-Document of CitiMortgage, Inc., known to me (or satisfactorily proven) to be the person whose name are subscribed to the within Verification and acknowledged he/she executed same in his/her capacity as Vice President for the purposes therein contained. _Document Control_

In witness hereof I hereunto set my hand and official seal.

_April Shell_
NOTARY PUBLIC
My Commission expires: _Aug. 8, 2016_

> APRIL M. SHELL
> Notary Public, ID No. 472312
> State at Large, Kentucky
> My Commission Expires August 8, 2016

Respectfully submitted

Mark Wittstadt, Esq. No. 497735
Gerard Wm. Wittstadt, Jr., Esq. No. 497127
David Chen Esq. No. 1000517
Patrick R. Jules Esq. No. 1011142
Morris | Hardwick | Schneider, LLC
9409 Philadelphia Road
Baltimore, Maryland 21237
410-284-9600
dchen@closingsource.net

DCFC - Complaint
DC-93000130-10
2013-09-19 @ 11:49:43 / BK

*8488013*

**EXHIBIT A**

Doc# 2004007005

R0311050

**THIS DEED**, made this 15th day of December, 2003, by and between JEFFREY W. GROTON, party of the first part, and SUZANNE M MILLER, party of the second part.

WITNESSETH, that in consideration of the sum of TEN DOLLARS ($10.00), receipt whereof is hereby acknowledged, the said party of the first part does grant and convey to the said party of the second part, in fee simple, as sole owner, the following described land and premises, situate in the District of Columbia and known and distinguished as:

Part of Lot numbered Twenty-nine (29) in Square North of Square numbered Two Hundred Forty-two (N-242) in a subdivision made by Levi Woodbury, as per Plat Recorded in the Office of the Surveyor for the District of Columbia in Liber 28, Folio 78.

The part of Land hereby Conveyed being more particularly designated as Unit Number 202, in a condominium known as "The Rockingham Condominium", according to the Declaration of Condominium Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and By-Laws related thereto, Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and as per Plat of Condominium Subdivision Recorded in the Office of the Surveyor for the District of Columbia in Condominium Book 25 at Page 1.

NOTE: At the date hereof the above described Unit is designated on the Records of the Assessor for the District of Columbia for assessment and Taxation purposes as Lot numbered Twenty Hundred Nine (2009) in Square North of Square numbered Two Hundred Forty-two (N-242).

TOGETHER with all of the appurtenances incident to the said Unit(s) as set forth in the said Condominium Declaration,

SUBJECT, HOWEVER, to the terms, provisions, conditions, covenants, easements and restrictions as set forth in said Declaration of Condominium and the By-Laws relating thereto.

The Condominium Declaration allocates to the Condominium Unit an undivided interest in (stated as a percentage) in the common elements of the Condominium (hereinafter called the Percentage Interest). The Percentage Interest of the Condominium Unit is set forth in the Condominium Declaration.

TOGETHER WITH all and singular the ways, easements, rights, and privileges and appurtenances to the same belonging or in anywise appertaining, and all the estate, right, title, interest, and claim, either at law or in equity or otherwise however, of the said party of the first part, of, in, to, or out of the said land and premises; subject to all easements, covenants and restrictions of record.

AND the party of the first part herein warrants specially the property hereby conveyed; and covenants to execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

Witness:

_____

_____                    JEFFREY W. GROTON _____(SEAL)

File No. R0311050 / Grantee Address: 1317 RHODE ISLAND AVENUE, NW #202, WASHINGTON, DC 20005

DISTRICT OF COLUMBIA, TO WIT;

I, a Notary Public, in and for the jurisdiction aforesaid, DO HEREBY CERTIFY THAT JEFFREY W. GROTON part(ies) to a certain DEED bearing date on the 15th day of December, 2003, and hereto annexed personally appeared before me in said jurisdiction, THE SAID JEFFREY W. GROTON known to me to be the person who executed the said Deed and acknowledged the same to be his/her act and deed.

Given under my hand and seal this 16th day of December, 2003.

My Commission Expires: 8./31/07   _____
NOTARY PUBLIC

AFTER RECORDING MAIL TO:
           SUZANNE M MILLER
           1317 RHODE ISLAND AVENUE, NW #202, WASHINGTON, DC 2000

PREPARED BY:        CAPITOL TITLE INSURANCE AGENCY, INC.
                    11300 ROCKVILLE PIKE, SUITE 502
                    ROCKVILLE, MD 20852

File No. R0311050 / Grantee Address: 1317 RHODE ISLAND AVENUE, NW #202, WASHINGTON, DC 20006

Doc# 2004007925
Book:
Pages:
Filed & Recorded
    01/14/2004   02:57:52 PM
LARRY TODD
RECORDER OF DEEDS
WASHINGTON D.C. RECORDER OF DEEDS
RECORDING          $    28.00
SURCHARGE          $     6.50
RECORDATION TAX    $  4,350.00
TRANSFER TAX 1.    $  4,350.00

**EXHIBIT B**

LOAN # ████870

# NOTE

DECEMBER 15, 2003                    ROCKVILLE,                    MARYLAND
[Date]                               [City]                       [State]

1317 RHODE ISLAND AVE 202 NW, WASHINGTON, DC 20005
[Property Address]

**1   BORROWER S PROMISE TO PAY**
In return for a loan that I have received I promise to pay U S    $275,500 00   (this amount is called Principal )
plus interest to the order of the Lender  The Lender is  ABN AMRO MORTGAGE GROUP, INC , A DELAWARE
CORPORATION

I will make all payments under this Note in the form of cash  check or money order
I understand that the Lender may transfer this Note  The Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the  Note Holder

**2   INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid  I will pay interest at a
yearly rate of   5 875%
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section
6(B) of this Note

**3   PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month
I will make my monthly payment on the   1ST   day of each month beginning on  FEBRUARY 1, 2004
I will make these payments every month until I have paid all of the principal and interest and any other charges described
below that I may owe under this Note  Each monthly payment will be applied as of its scheduled due date and will be
applied to interest before Principal  If on   JANUARY 1, 2034,   I still owe amounts under this Note  I will
pay those amounts in full on that date  which is called the  Maturity Date
I will make my monthly payments at
4242 N  HARLEM AVE
NORRIDGE, IL  60706
ATTN  CASHIERING
or at a different place if required by the Note Holder
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U S    $1,629 69

**4   BORROWER S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due  A payment of Principal only is known
as a  Prepayment  When I make a Prepayment  I will tell the Note Holder in writing that I am doing so  I may not designate
a payment as a Prepayment if I have not made all the monthly payments due under the Note
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge  The Note Holder will
use my Prepayments to reduce the amount of Principal that I owe under this Note  However  the Note Holder may apply
my Prepayment to the accrued and unpaid interest on the Prepayment amount  before applying my Prepayment to
reduce the Principal amount of the Note  If I make a partial Prepayment  there will be no changes in the due date or in
the amount of my monthly payment unless the Note Holder agrees in writing to those changes

**5   LOAN CHARGES**
If a law  which applies to this loan and which sets maximum loan charges  is finally interpreted so that the interest
or other loan charges collected or to be collected in connection with this loan exceed the permitted limits  then  (a) any
such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit  and (b) any
sums already collected from me which exceeded permitted limits will be refunded to me  The Note Holder may choose
to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me  If a refund
reduces Principal  the reduction will be treated as a partial Prepayment

**6   BORROWER S FAILURE TO PAY AS REQUIRED**
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar
days after the date it is due  I will pay a late charge to the Note Holder  The amount of the charge will be   5 000%
of my overdue payment of principal and interest  I will pay this late charge promptly but only once on each late payment

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due  I will be in default
(C) Notice of Default
If I am in default  the Note Holder may send me a written notice telling me that if I do not pay the overdue amount
by a certain date  the Note Holder may require me to pay immediately the full amount of Principal which has not been
paid and all the interest that I owe on that amount  That date must be at least 30 days after the date on which the notice
is mailed to me or delivered by other means
(D) No Waiver By Note Holder
Even if  at a time when I am in default  the Note Holder does not require me to pay immediately in full as described
above  the Note Holder will still have the right to do so if I am in default at a later time

Initials [signature]

LOAN #          2810

**(B) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7   GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8   OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9   WAIVERS**
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. Presentment means the right to require the Note Holder to demand payment of amounts due. Notice of Dishonor means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10   UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
SUZANNE M MILLER

PAY TO THE ORDER OF

WITHOUT RECOURSE
ABN AMRO MORTGAGE GROUP INC

_____
MARGARETA BEZY
FIRST VICE PRESIDENT

[Sign Original Only]

MULTISTATE FIXED RATE NOTE Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3200 1/01
© 1999 2002 Online Documents, Inc.          Page 2 of 2                    F3200NOT



**EXHIBIT C**

Doc# 2004454/826

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
P.O. BOX 5064
TROY, MICHIGAN 48084
ATTN:FINAL/TRAILING DOCUMENTS

CAPITOL TITLE INSURANCE AGENCY, INC.
11300 ROCKVILLE PIKE, SUITE #002
ROCKVILLE, MD. 20852

LOAN #: [REDACTED]870          [Space Above This Line For Recording Data] — Po 311050

PURCHASE MONEY
## DEED OF TRUST

**DEFINITIONS**
Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated **DECEMBER 15, 2003,** together with all Riders to this document.
(B) "Borrower" is **SUZANNE M HILLER, A SINGLE WOMAN.**

Borrower's address is  **1260 21ST ST. NW #800, WASHINGTON, DC 20036.**

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  **ABN AMRO MORTGAGE GROUP, INC.**

Lender is a  **CORPORATION,**                                    organized and existing
under the laws of **DELAWARE.**                                  Lender's address is
**2600 W. BIG BEAVER RD., TROY, MICHIGAN 48084.**

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  Andy Lewy

Trustee's address is ,  . 11300   Rockville Pike, #502, Rockville, MD 20852

(E) "Note" means the promissory note signed by Borrower and dated **DECEMBER 15, 2003.**    The Note states that Borrower owes Lender ***TWO HUNDRED SEVENTY FIVE THOUSAND FIVE HUNDRED AND NO/100
*********************************************************** Dollars (U.S.   $275,500.00   )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **JANUARY 1, 2034.**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☒ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider             ☐ Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
                                                                Initials:

DISTRICT OF COLUMBIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3006 1/01 (rev. 6/02)
© 1999-2003 Online Documents, Inc.                 Page 1 of 9                          DCUDEED  0301

LOAN #: ███████870

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the     COUNTY                [Type of Recording Jurisdiction] of
DISTRICT OF COLUMBIA                [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of 1317 RHODE ISLAND AVE 202 NW, WASHINGTON                [Street]

Washington, District of Columbia 20005            ("Property Address"):
                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's

Initials: _____

DISTRICT OF COLUMBIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3009 1/01 (rev. 5/01)
© 1999-2004 Online Documents, Inc.                Page 2 of 9                          DCUDEED

LOAN #: XXXXX870

check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DISTRICT OF COLUMBIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3009 1/01 (rev. 5/02)
© 1999-2003 Online Documents, Inc.   Page 3 of 9

Initials: _____
DCUDEED

LOAN #: [redacted]870

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. ***Preservation, Maintenance and Protection of the Property; Inspections.*** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from

Initials: [illegible]

LOAN #: ████0870

deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

DISTRICT OF COLUMBIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3009 1/01 (rev. 6/02)
© 1999-2003 Online Documents, Inc.     Page 6 of 9

Initials: _____
DCUDEED

LOAN #: ███████870

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Initials: ███

DISTRICT OF COLUMBIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3009 1/01 (rev. 6/02)
© 1999-2003 Online Documents, Inc.    Page 6 of 9    DCUDEED

LOAN #: 0870

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). To the extent permitted by Applicable Law, Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, the right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made, and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

LOAN #: [redacted]870

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall send written notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall give notice of sale by public advertisement as Trustee deems proper to protect the interests of Borrower and Lender. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of ____ % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by recording a Deed of Appointment. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

DISTRICT OF COLUMBIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
© 1999-2000 Online Documents, Inc.
Page 8 of 9

Form 3009 1/01 (rev. 6/02)
Initials: [signature]
DCUD009

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

LOAN #: ████870

_Suzanne M. Miller_ (Seal)
SUZANNE M MILLER

District of Columbia, ss:

This instrument was acknowledged before me on _December 15, 2003_ (date) by SUZANNE
M MILLER (name(s) of person(s)).

My commission expires:  __8/31/07__

_____
Signature of Notarial Officer

(Seal)

_____
Title (and Rank)

FILE NO. R0311050

EXHIBIT "A"

Part of Lot numbered Twenty-nine (29) in Square North of Square numbered Two Hundred Forty-two (N-242) in a subdivision made by Levi Woodbury, as per Plat Recorded in the Office of the Surveyor for the District of Columbia in Liber 28, Folio 73.

The part of Land hereby Conveyed being more particularly designated as Unit Number 202, in a condominium known as "The Rockingham Condominium", according to the Declaration of Condominium Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and By-Laws related thereto, Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and as per Plat of Condominium Subdivision Recorded in the Office of the Surveyor for the District of Columbia in Condominium Book 25 at Page 1.

NOTE: At the date hereof the above described Unit is designated on the Records of the Assessor for the District of Columbia for assessment and Taxation purposes as Lot numbered Twenty Hundred Nine (2009) in Square North of Square numbered Two Hundred Forty-two (N-242).

TOGETHER with all of the appurtenances incident to the said Unit(s) as set forth in the said Condominium Declaration,

SUBJECT; HOWEVER, to the terms, provisions, conditions, covenants, easements and restrictions as set forth in said Declaration of Condominium and the By-Laws relating thereto.

The Condominium Declaration allocates to the Condominium Unit an undivided interest in (stated as a percentage) in the common elements of the Condominium (hereinafter called the Percentage Interest). The Percentage Interest of the Condominium Unit is set forth in the Condominium Declaration.

CTA.01APM

When recorded mail to:
ABN AMRO MORTGAGE GROUP, INC.
P.O. BOX 5064
TROY, MICHIGAN 48084
ATTN:FINAL/TRAILING DOCUMENTS

LOAN #: ▒▒▒▒870

———— Space above this line for recording data ————

## Address Declaration

Trustee: Andy Levy
11300 Rockville Pike, #502
Rockville, MD. 20852

Beneficiary:  ABN AMRO MORTGAGE GROUP, INC.
2600 W. BIG BEAVER RD.
TROY, MICHIGAN 48084

DOCVR #12

LOAN #: ▓▓▓▓0870

## CONDOMINIUM RIDER

THIS CONDOMINIUM RIDER is made this 15TH day of DECEMBER, 2003 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION

(the "Lender")
of the same date and covering the Property described in the Security Instrument and located at: 1317 RHODE ISLAND AVE 202 NW, WASHINGTON, DC 20005.

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as: Unknown

(the "Condominium Project").
If the owners association or other entity which acts for the Condominium Project (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under the Condominium Project's Constituent Documents. The "Constituent Documents" are the: (i) Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.
Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. Public Liability Insurance. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. Condemnation. The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

Initials: _____

MULTISTATE CONDOMINIUM RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01
© 1999-2002 Online Documents, Inc.             Page 1 of 2             F3140RDU 0205

LOAN #: ████0870

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F. shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_Suzanne M. Miller_ (Seal)
SUZANNE M MILLER

MULTISTATE CONDOMINIUM RIDER–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3140 1/01
© 1999-2002 Online Documents, Inc.                    **Page 2 of 2**                    F3140RDU



**EXHIBIT D**

# STATE OF NEW YORK

## DEPARTMENT OF STATE

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.



WITNESS my hand and official seal of the Department of State, at the City of Albany, on September 4, 2007.

Paul LaPointe
Special Deputy Secretary of State

Rev. 06/07

070831000 0 2 19

**CT-07**

CERTIFICATE OF MERGER

of

ABN AMRO MORTGAGE GROUP, INC.

into

CITIMORTGAGE, INC.

Under Section 904 of the Business Corporation Law

It is hereby certified, on behalf of each of the constituent corporations herein named, as follows:

FIRST: The Board of Directors of each of the constituent corporations has duly adopted an agreement and plan of merger (the "Plan of Merger") setting forth the terms and conditions of the merger of said corporations.

SECOND: The name of the domestic constituent corporation, which is to be the surviving corporation (hereinafter sometimes referred to as the "surviving constituent corporation"), is CITIMORTGAGE, INC. The name under which the surviving constituent corporation was formed is BT International Trading Corporation. The date upon which its certificate of incorporation was originally filed by the Department of State is May 7, 1984.

THIRD: The name of the foreign constituent corporation, which is being merged into the surviving constituent corporation (hereinafter sometimes referred to as the "merged constituent corporation"), is ABN AMRO MORTGAGE GROUP, INC. and the name under which it was formed is Cragin Financial Corp. The jurisdiction of its incorporation is Delaware and the date of its incorporation therein is January 3, 1991.

FOURTH: An Application for Authority in the State of New York of the merged constituent corporation to transact business as a foreign corporation was not filed with the Department of State of the State of New York.

FIFTH: As to each constituent corporation, the Plan of Merger sets forth the designation and number of outstanding shares of each class and series (which number is not subject to change), the specification of the classes and series entitled to vote on the Plan of Merger, and the specification of each class and series entitled to vote as a class on the Plan of Merger, as follows:

CITIMORTGAGE, INC.

| Designation of each outstanding class and | Number of outstanding shares of | Designation of class and series entitled to | Classes and series entitled to vote as a |
|---|---|---|---|

| series of shares | each class | vote | class |
|---|---|---|---|
| Common Stock, par value $1.00 per share | 1,000 shares | Common Stock, par value $1.00 per share | N/A |

### ABN AMRO MORTGAGE GROUP, INC.

| Designation of each outstanding class and series of shares | Number of outstanding shares of each class | Designation of class and series entitled to vote | Classes and series entitled to vote as a class |
|---|---|---|---|
| Common Stock, par value $.01 per share | 100 shares | Common Stock, par value $.01 per share | N/A |

SIXTH: The merger herein certified was authorized in respect of the surviving constituent corporation by the written consent of the sole stockholder of the corporation which has been given in accordance with section 615 of the Business Corporation Law of the State of New York. Written notice has been given as and to the extent required by the said section 615.

SEVENTH:  The merger herein certified was permitted by and in compliance with the General Corporation Law of the State of Delaware.

EIGHTH:   The Amended and Restated Certificate of Incorporation of the Surviving Corporation shall be its Certificate of Incorporation.

NINTH:  The effective date of the merger herein certified, insofar as the provisions of the Business Corporation Law of the State of New York govern such effective date, shall be the 1st day of September, 2007.

-2-

IN WITNESS WHEREOF, the undersigned duly authorized officers of the surviving constituent corporation and the merged constituent corporation hereunto set their hands this **21** day of August, 2007.

CITIMORTGAGE, INC.

BY: _____

Name:   William P. Beckmann
Title:    President

ABN AMRO MORTGAGE GROUP, INC.

BY: _____

Name:   William P. Beckmann
Title:    President

- 3 -

**CT-07**

07083100.0 219

CERTIFICATE OF MERGER

OF

ABN AMRO MORTGAGE GROUP, INC.

INTO

CITIMORTGAGE, INC.

Under Section 904 of the Business Corporation Law.

Filed by:   Donna Englert
            (Name)
            PO Box 790104
            (Mailing address)
            St Louis MO   63179
            (City, State and Zip code)

Cst ref# 7012078my

2007 AUG 31 AM 11: 12

Icc
STATE OF NEW YORK
DEPARTMENT OF STATE
FILED  AUG 3 1 2007
TAX $
BY:
NY

DOWN

DRAWDOWN

RECEIVED
2007 AUG 29 PH 12: 14

252

**EXHIBIT E**

CitiMortgage, Inc.
PO BOX 790005
St. Louis MO 63179-0005

**CitiMortgage**



www.citimortgage.com

06/20/2013

00X00240 B8 1OZ 171 DFL0001D AMI  848

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖



SUZANNE M MILLER
1317 RHODE ISLAND AVE NW  202
WASHINGTON DC 20005-3728

RE: Property Address:       1317 RHODE ISLAND AV
                            WASHINGTON DC 20005
    CitiMortgage Loan #:    ████████0870
    Security Instrument Dated:  12/15/03

Dear CitiMortgage Customer(s):

THE ABOVE REFERENCED LOAN IS IN DEFAULT. Payments have not been made as required by the note and mortgage or deed of trust (the "Security Instrument"). Refer to the note and Security Instrument for additional information. CitiMortgage, Inc. is providing this notice as lender or servicing agent for the lender. If you have filed bankruptcy, this notice is provided to you for compliance and informational purposes and is not an attempt to collect a debt from you (deficiency or otherwise) or in any way violate the provisions of the United States Bankruptcy Code.

To cure the default you must pay the past due amount of $108,042.86, including $0.00 in late charges and $1,075.91 in delinquency related expenses. We must receive your payment by 07/25/13 (or the next business day thereafter if 07/25/13 is a Saturday, Sunday, or Federal holiday). Any additional monthly payments and late charges that fall due by 07/25/13 must also be paid to bring your account current. Please send your payment to:

    CitiMortgage, Inc.
    P.O. Box 183040
    Columbus, OH 43218-3040

Failure to cure the default by 07/25/13 may result in the acceleration of all sums due under the Security Instrument. This means the entire unpaid balance will become due. Also, your property may be sold in accordance with the terms of the Security Instrument and applicable law. The Security Instrument entitles us to collect all expenses incurred in pursuing our remedies.

You have the right to reinstate your loan after acceleration in accordance with the terms of the Security Instrument. You have the right to bring a court action or to assert in any foreclosure proceeding, the non-existence of a default or any other defense you have to acceleration and the sale of the property.

Under Internal Revenue Service (IRS) regulations, we may be required to report any foreclosure to the IRS. The foreclosure may result in income tax consequences to you. Consult the IRS or your tax advisor for further information.



© 2013 CitiMortgage, Inc. CitiMortgage, Inc. does business as Citicorp Mortgage in NM. CitiMortgage, Inc. is an equal housing lender. Citi, Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any information obtained will be used for that purpose.

D09REM117

Page 2 of 2

06/20/2013

▓▓▓▓0870

You may be eligible for homeownership counseling from one of the Department of Housing and Urban Development ("HUD") approved homeownership counseling agencies. Please call us at 1-800-723-7906* (Monday through Friday 7 AM-11 PM CST, Saturday 7 AM-4 PM CST, and Sunday 7 AM-7 PM CST) for information regarding the HUD-approved homeownership counseling agency nearest you or to discuss the circumstances of the default with one of our loan counselors. TTY Services are also available. To access: Dial 711 from the United States or Dial 1-866-280-2050 from Puerto Rico. When you call or write to us, please refer to your loan number: ▓▓▓▓0870.

Are you concerned with how we've handled your account? Have you recently been declined for a modification or a short sale and disagree with our decision? Call us at 1-877-435-3314* (Monday through Friday 7 AM-11 PM CST, Saturday and Sunday 7 AM-7 PM CST) or email us at: eru_support@citi.com**. You may also contact us via mail at: CitiMortgage, Inc., P.O. Box 6243, Sioux Falls, SD 57117-6243.

Sincerely,

Collection Department
CitiMortgage, Inc.

*Calls are randomly monitored and recorded to ensure quality service.

**If contacting CitiMortgage through email, please do not include confidential information.

This is an attempt to collect a debt, and any information obtained will be used for that purpose.

TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO AN AUTOMATIC STAY OF BANKRUPTCY ORDER UNDER TITLE 11 OF THE UNITED STATES CODE, THIS NOTICE IS FOR COMPLIANCE AND INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT ANY SUCH OBLIGATION.

CitiMortgage



www.citimortgage.com

05/13/2013

SUZANNE M MILLER
1317 RHODE ISLAND AVE NW APT 202
WASHINGTON, DC  20005-3728

**Your property may be referred to foreclosure unless immediate action is taken.**

Account:                          ░░░░░0870
Property Address:     1317 RHODE ISLAND AV
                                 WASHINGTON, DC  63115

**Please note:  As a result of your bankruptcy case, this letter is not an attempt to collect a debt from you or in any way violate any provision of the United States Bankruptcy Code. This letter has been sent to you for informational purposes only. This is not a bill or a request for payment, or a statement that you are personally obligated in any way to make a payment.**

**Your decision to discuss workout options with CitiMortgage, Inc. is strictly voluntary.  You are not obligated to pursue any workout options discussed with us.  At your request, we immediately terminate any such discussions should you no longer wish to pursue these options.**

Dear SUZANNE M MILLER:

We are writing to let you know that your property may be referred to foreclosure after 14 days from the date of this letter.

You may be able to avoid foreclosure by obtaining a loan modification, or selling your house through a short sale approved by us.

We want to give you important information about the status of your account, discuss next steps, and let you know about workout options that may be available. Be sure you read this letter in its entirety. It also spells out, in legal terms, why we are moving forward with the foreclosure process and what you may do in response.

We are required to notify you of the following:

1.   **Loss Mitigation options**

Unless you have directed us not to, we have offered or undertaken loss mitigation efforts with respect to your loan. According to our records:


©2013 CitiMortgage, Inc. CitiMortgage, Inc. does business as Citicorp Mortgage in NM. CitiMortgage, Inc. is an equal housing lender. Citi, Arc Design, and Citi and Arc Design are registered service marks of Citigroup Inc. *Calls are randomly monitored and recorded for quality assurance. CitiMortgage is a debt collector and any information obtained will be used for that purpose.

                                                                              2272738423



We have been unable to contact you or we have not yet received a complete initial package / borrower response package from you to consider you for a loan modification.

You did not qualify for a loan modification or your most recent loan modification application was denied.

You failed to complete the trial plan for a loan modification.

You have stated that you are not interested in pursuing an available loan modification or you have not accepted our offer to modify your loan.

No loss mitigation efforts were offered or undertaken with respect to a loan modification and we have not attempted to contact you to discuss the possibility of a loan modification or other loss mitigation option.

__X__   You are ineligible for a loan modification or other loss mitigation options because:

Your loan is ineligible (e.g., the unpaid balance is too high or too low).

__X__   Your property is ineligible (e.g., it consists of more than 4 dwelling units or has been condemned).

Your property has become subject to a senior lien (e.g., a mechanics lien or lien in favor of your homeowner's association).

The investor/guarantor/insurer who has the right to specify loss mitigation options with respect to your loan will not permit loan modifications or other loss mitigation options.

If your circumstances have changed, if you believe that your application for a modification was denied in error, or if you would like to discuss any alternative to foreclosure, including a loan modification, please contact us immediately.

2.  Important account information

- The total amount needed to reinstate or bring the account current is $105,942.14 as of the date of this letter. Please note: These amounts are subject to change. Please call us at one of the telephone numbers listed below for the most current amount.
- The amount of the principal obligation under the mortgage is $255,617.36.
- The date through which the account is paid is 12/01/2008.
- The date of the last full payment was 08/14/2009.
- The current interest rate in effect for the loan is 5.87500%.
- The date on which the interest rate may next reset or adjust is N/A.
- The amount of any prepayment fee to be charged, if any, is $0.00.
- The amount of late payment fees included in the above reinstatement amount is $0.00.

3.  Right to foreclose

- CitiMortgage, Inc. services your mortgage loan. You signed a promissory note secured by a mortgage or deed of trust or other security instrument. CitiMortgage, Inc. intends to initiate a

foreclosure on the mortgaged property in the name of:

_____ CITIMORTGAGE, INC. _____ ("Noteholder").

Noteholder, directly or through an agent, has possession of the promissory note. The promissory note has been duly indorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust for the referenced loan.

4. **Borrower's responsibilities**

- If you continue to occupy the property, you have the responsibility to maintain the property and an obligation to continue to pay taxes owed until a sale or title transfer occurs.
- If you are considering moving out or abandoning the property, please contact us to discuss alternatives to foreclosure under which you may be able to surrender the property in exchange for compensation.

5. **Additional account information**

Upon written request, you are entitled to the following information:

- A copy of your payment history from the period the loan was last less than 60 days delinquent to present
- A copy of the note, or lost note affidavit, if applicable
- The name of the Investor that holds the loan
- If we commence foreclosure or file a Proof of Claim, you may obtain copies of any assignments of mortgage or deed of trust required to demonstrate our right to foreclose under applicable state law

You can submit a written request for the information listed above to:

Regular Mail:     CitiMortgage, Inc.
                  P.O. Box 6117
                  Sioux Falls, SD 57117-6117

6. **Assistance available to you**

- You can contact us by calling 877-435-3314* to obtain information regarding your mortgage.

- CitiMortgage, Inc. offers homeownership counseling services to borrowers in some areas. Free counseling is also available from nonprofit homeownership counselors approved by the Secretary of Housing and Urban Development (HUD). You can find a housing counselor near you by calling HUD toll-free at 800-569-4287 or at www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Again, if you have any questions, please call us at one of the telephone numbers listed below. General office hours are Monday - Friday 7:00 a.m. to 11:00 p.m. CT and Saturday - Sunday 7:00 a.m. to 7:00 p.m.**



Sincerely,

CitiMortgage, Inc.
877-435-3314
www.citimortgage.com


*CALLS ARE RANDOMLY MONITORED AND RECORDED TO ENSURE QUALITY SERVICE.

**Hours of operation provided reflect general hours for the Homeowner Support Specialist unit.

TTY Services available: Dial 711 from the United States; Dial 1-866-280-2050 from Puerto Rico.

The purpose of this communication is to collect a debt and any information obtained will be used for that purpose.

If an attorney represents you, please refer this letter to your attorney and provide us with the attorney's name, address and telephone number.

To the extent your obligation has been discharged or is subject to an automatic stay of bankruptcy order under Title 11 of the United States Code, this notice is for compliance and informational purposes only and does not constitute a demand for payment or an attempt to collect any such obligation.

**EXHIBIT F**

Department of Defense Manpower Data Center

Results as of : Sep-19-2013 04:46:24

SCRA 3.0



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>MILLER</u>
First Name: <u>SUZANNE</u>
Middle Name:
Active Duty Status As Of: <u>Sep-19-2013</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | NA | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | NA | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | NA | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty. HOWEVER, WITHOUT A SOCIAL SECURITY NUMBER, THE DEPARTMENT OF DEFENSE MANPOWER DATA CENTER CANNOT AUTHORITATIVELY ASSERT THAT THIS IS THE SAME INDIVIDUAL THAT YOUR QUERY REFERS TO. NAME AND DATE OF BIRTH ALONE DO NOT UNIQUELY IDENTIFY AN INDIVIDUAL.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status data provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Certificate ID: N4BD152AL08CDC0

**EXHIBIT G**

Return to:
Morris|Hardwick|Schneider, LLC
9409 Philadelphia Road
Baltimore, MD 21237





## DEED OF APPOINTMENT OF SUBSTITUE TRUSTEES

This Deed of Appointment of Substitute Trustees made this ___21___ day of __July__, 2010, by CitiMortgage, Inc. who hereby designate and appoint Mark H. Wittstadt and Gerard Wm. Wittstadt, Jr. as Substitute Trustees in the place of Andy Levy as Trustees.

WHEREAS, under a certain Deed of Trust, dated December 15, 2003 and recorded among the Land Records of District of Columbia, in Instrument #2004007026, the hereinafter described property was conveyed to Andy Levy, as Trustee, to secure a Note of even date therewith in the amount of $275,500.00 executed by Suzanne M. Miller and on the following secured property, to wit:

## FOR LEGAL DESCRIPTION SEE ATTACHED EXHIBIT A

WHEREAS, the Deed of Trust provides that the Noteholders shall have the right and power to substitute one or more of the Trustees in place of the original Trustees named in the said Deed of Trust.

NOW, THEREFORE, CitiMortgage, Inc. , the current holder(s) of the Note described herein and secured by the aforesaid Deed of Trust and in exercise of the powers contained in the said Deed of Trust do hereby nominate, designate and appoint MARK H. WITTSTADT and GERARD WM. WITTSTADT, JR as substitute trustees in the place and stead of Andy Levy with all powers, rights, duties and authority of the superseded Trustees.

DCFC-DeedfApptofSubstituteTrustee_DONE
File No.: DC-93000130-10
1317 Rhode Island Avenue 202 NW, Washington, DC 20005

53

WITNESS the hands and seals of the said Noteholders.

CitiMortgage, Inc.

Mark H. Wittstadt, Esquire as their attorney in fact

State of _MD_

County/City _Balto_

On this _31st_ day of _July_, 2010, before me, the undersigned officer, personally appeared Mark H. Wittstadt, Esquire who is the agent and attorney in fact for CitiMortgage, Inc. (Noteholder), known to me (or satisfactorily proven) to be the person whose name are subscribed to the within Deed of Appointment of Substitute Trustees and acknowledged he/she executed same in his/her capacity as Attorney in Fact for the purposes therein contained.

In witness hereof I hereunto set my hand and official seal.

NOTARY PUBLIC

My Commission Expires: _8/21/11_

DCFC-DeedfApptofSubstituteTrustee_DONE
File No.: DC-93000130-10
1317 Rhode Island Avenue 202 NW, Washington, DC 20005

## EXHIBIT A

Part of Lot numbered Twenty-nine (29) in Square North of Square numbered Two Hundred Forty-two (N-242) in a subdivision made by Levi Woodbury, as per Plat Recorded in the Office of the Surveyor for the District of Columbia in Liber 28, Folio 73.

The part of Land hereby Conveyed being more particularly designated as Unit Number 202, In a condominium known as "The Rockingham Condominium", according to the Declaration of Condominium Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and By-Laws related thereto, Recorded February 28th, 1980 among the Land Records of the District of Columbia as Instrument Number 8000007564, as amended, and as per Plat of Condominium Subdivision Recorded in the Office of the Surveyor for the District of Columbia in Condominium Book 25 at Page 1.

NOTE: At the date hereof the above described Unit is designated on the Records of the Assessor for the District of Columbia for assessment and Taxation purposes as Lot numbered Twenty Hundred Nine (2009) In Square North of Square numbered Two Hundred Forty-two (N-242).

TOGETHER with all of the appurtenances incident to the said Unit(s) as set forth in the said Condominium Declaration,

SUBJECT, HOWEVER, to the terms, provisions, conditions, covenants, easements and restrictions as set forth in said Declaration of Condominium and the By-Laws relating thereto,

The Condominium Declaration allocates to the Condominium Unit an undivided interest in (stated as a percentage) in the common elements of the Condominium (hereinafter called the Percentage interest). The Percentage interest of the Condominium Unit is set forth in the Condominium Declaration.

DCFC-DeedfApptofSubstituteTrustee_DONE
File No.: DC-93000130-10
1317 Rhode Island Avenue 202 NW, Washington, DC 20005

Doc# 2010064949 Fees:$33.50
07/23/2010   12:44PM Pages 3
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

RECORDING
SURCHARGE            $       27.00
                     $        6.50